No. 43,526

A. J. KELLER, et al., *Appellees*, v. JAMES E. ELY, *Appellant.*

(391 P. 2d 132)

Opinion filed April 11, 1964.

*Logan N. Green*, of Garden City, argued the cause, and *Ray H. Calihan* and *Ray H. Calihan, Jr.*, both of Garden City, were with him on the brief for the appellant.

*John W. MacGregor*, of Medicine Lodge, argued the cause, and *Riley W. MacGregor* and *W. Luke Chapin*, both of Medicine Lodge, were with him on the brief for the appellees.

The opinion of the court was delivered by

PRICE, J.: This action was brought in order to obtain a judicial construction of a "mineral" reservation contained in a deed to a 320-acre tract of land in Barber county.

The specific question presented is whether the reservation in question includes gypsum.

The trial court held that it does not, and the appeal is from that ruling.

The facts are not in dispute.

On March 8, 1917, defendant, James E. Ely, acquired title to the tract of land in question. Shortly thereafter he executed a deed to one Lytle to an undivided one-half interest in the property.

On May 2, 1921, Lytle executed a deed to a bank to the undivided one-half interest owned by him. This deed contained an exception and reservation as follows:

"Except all gas, oil and mineral rights which parties of the first part reserve and the right to enter upon said premises for the sole and only purpose of mining and operating for oil and gas, laying pipelines, building tanks, power stations, and structures thereon to produce, save and take care of said products."

On July 5, 1923, the bank deeded its interest in the property to one Trekell. This deed contained no exception or reservation.

Later, Trekell deeded his undivided one-half interest in the land to James E. Ely—he being the one who, in 1917, had deeded the undivided one-half interest to Lytle. This deed from Trekell to Ely contained no exception or reservation.

On July 29, 1943, James E. Ely, being then the owner of the entire interest in the property, subject to the exception and reservation contained in the deed from Lytle to the bank, executed a deed to all of the property to Byron Smith. This deed contained the following reservation:

"As a most important part of the consideration for the purchase of this land, party of the first part hereby reserves, all of the oil, gas, casing-head gas and other liquid semi-solid and solid minerals in and under and that may be produced from the above described lands, together with the rights of ingress, egress and regress to and from the said premises for the purpose of mining, exploring, operating, producing, storing and removing therefrom, all of the oil, gas, casing-head gas and other liquids semi-solid and solid minerals including all of the lease interests and future rentals on said lands for said minerals. And all of the mineral rights and all other rights hereinbefore set out, are hereby as fully retained by first party, and are to be as full and free as though this deed had not been executed."

The foregoing reservation is the subject of this lawsuit, and the question is—does it include gypsum?

In 1951 Byron Smith deeded the property in question to plaintiffs A. J. Keller and wife, subject to the exceptions and reservations above noted. Plaintiffs later sought to sell the land to the National Gypsum Company for the purpose of mining and removing the

gypsum therefrom. A dispute arose as to the ownership of the gypsum—hence this lawsuit to determine whether gysum is included in the reservation in the 1943 deed from Ely to Smith, set out above.

In deciding the question the trial court filed a memorandum opinion setting forth its reasons for holding that the reservation in question does not include gypsum, and we quote material portions of its decision:

"The issues to be determined herein:

"(1) Is the exception and reservation made in the Lytle deed to the Security Trust and Savings Bank a legal and valid reservation of oil, gas and mineral rights and does said reservation include gypsum?

"(2) Does the reservation in the James E. Ely deed to Byron Smith reserve and retain in the grantor gypsum in addition to the oil, gas and other minerals?

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"Considering first the number (1) issue and the Lytle deed, I have heretofore overruled the demurrer of the defendant, Ely, to the Lytle cross petition. I shall now have to hold that the Lytle deed contains a valid reservation binding upon all of the parties herein. Does this reservation include gypsum? I think not. I think the doctrine of ejusdem generis applies in this case. I think further that the words, 'with the right to enter upon said premises for the sole and only purpose of mining and operating for oil and gas, etc.,' are words of limitation upon the preceding phrase, 'all gas, oil and mineral rights.' Therefore, I shall hold that the Lytle deed does reserve one-half of all oil and gas in and under the land described but does not include any gypsum in or under the premises in question."

With respect to the reservation in the deed from Ely to Smith, and which is the crux of this lawsuit, the court held:

"Now, as to the Ely reservation in the deed recorded in Volume 57, at page 202, in the office of the register of Deeds of Barber County, Kansas. This deed was made in July, 1943, when both grantor and grantee should have been fully cognizant of the fast-developing oil and gas fields in Barber County. They also must have known of the gypsum mining and/or quarrying in the area. According to the map and bulletin of the State Geological Survey, they could perhaps have seen the gypsum outcropping on the land in question. The reservation is quite specific and inclusive as to oil and gas and kindred minerals such as axle grease and carbons which probably are semi-solids or solid minerals. If the grantor had intended to reserve gypsum, how easy it would have been to insert the one word 'gypsum' in the reservation. Sand is also a mineral. It is a well-known fact that much sand is found in Kansas soil. Even quartz for the manufacture of glass is a suspect in the area. We have all seen land tracts with sand and gravel pits that became as worthless appearing as the exhausted coal-mining areas in Southeast Kansas. Did the grantee particularly intend that the grantor was reserving sand and gravel under the term 'minerals?' From the meager evidence I can only assume that the gypsum might be taken either through mining or quarrying. If the

latter, could either of the parties have intended that little or much of the surface of the land in question under the reservation was subject to being laid waste by the taking of the gypsum and/or sand and gravel? If the grantee acquired this property for a song, perhaps 'yes;' if for a valuable consideration, certainly 'no.'

"In 58 C. J. S. 17, supported by the case of *In re Estate of Trester*, 172 Kan. 478, appears one of the rules which should be determinative of this case.

" 'In determining its meaning in a particular case, regard must be had not only to the language of the instrument in which it occurs, but also to the relative position of the parties interested, and to the substance of the transaction which the instrument embodies.'

"Considering such evidence as appears of record herein and the general knowledge of people of the area, I think the rule of ejusdem generis is most applicable to this reservation. I shall, therefore, hold that the reservation in the Ely-Smith deed does reserve one-half of all oil, gas and kindred minerals and lease interests as set forth in said reservation but does not include the gypsum in or under the land in question."

Accordingly judgment was entered—

"1. That the Plaintiffs are the owners of all gypsum and gypsum interest in and under the land described in Plaintiffs' Petition and they have full rights to sell same and permit the quarrying or mining thereof."

and defendant Ely has appealed and contends that the reservation in the 1943 deed from him to Smith reserved *all* minerals and thus includes gypsum—and therefore he is entitled to the gypsum in and under the land in question.

Notwithstanding the several arguments advanced by defendant Ely in support of his contention, we believe the trial court's analysis of the matter is sound and that a correct decision was reached. As reflected by its decision, it was of the opinion the rule of *ejusdem generis* applied in construing the reservation in question. Briefly stated, that rule is a well-known maxim of construction to aid in ascertaining the meaning of a statute or other instrument, the doctrine being that where an enumeration of specific things is followed by some more general word or phrase, such general word or phrase is to be held to refer to things of the same kind with respect to a classification which immediately precedes it—that is to say, where general words follow particular words in an enumeration describing the subject matter, general words are construed to embrace only objects similar in nature to those enumerated by antecedent specific words. ( 28 C. J. S., Ejusdem, p. 1049. )

In *Williams v. Vincent*, 70 Kan. 595, 79 Pac. 121, 109 Am. St. Rep. 469, 68 L. R. A. 634, it was said:

"The rule of interpretation employed is known technically as that of *ejusdem generis*. It requires that the meaning of general terms be restricted by particular words preceding them. . . ." (p. 597.)

See also *Parman v. Lemmon*, 119 Kan. 323, 327, 244 Pac. 227, 44 A. L. R. 1500.

In referring to the rule in 16 Am. Jur., Deeds, § 176, p. 537, it is said:

"Similarly, in the construction of deeds and what passes thereunder, if after an enumeration of particulars, there is a sweeping clause comprising all other things, the scope of such a clause is restricted to things, within the description, of the same kind as the particulars enumerated."

Generally speaking, a deed is to be construed strictly against the grantor, and to confer upon the grantee the greatest estate that its terms will permit. Our statute, G. S. 1949, 67-202, provides:

". . . and every conveyance of real estate shall pass all the estate of the grantor therein, unless the intent to pass a less estate shall expressly appear or be necessarily implied in the terms of the grant."

In *In re Estate of Trester*, 172 Kan. 478, 241 P. 2d 475, an instrument entitled "Sale of Oil and Gas Royalty" which conveyed an "interest in and to all of the oil, gas and other minerals in and under, and that may be produced from the following described land," was construed as not including a deposit of clay.

In *Davis v. Plunkett*, 187 Kan. 121, 353 P. 2d 514, a mining lease granting a right "for the sole purpose of mining and removing Volcanic Ash, and all other minerals or mineral derivatives from the following described land" was construed as not including oil, gas or other petroleum products.

The Davis case quoted with approval the following statement found at pp. 482 and 483 of the Trester case:

"It is true that in classifying things as animal, vegetable and mineral, everything that goes to make up the earth comes within the general classification of minerals. But this general classification cannot be used for the interpretation of instruments granting specific rights. With respect to that matter the term 'mineral' is not a definite one capable of universal application. It is susceptible to limitations according to the intention of the parties using it, and in determining its meaning in a specific instrument not only the language of the instrument in which it occurs but also the relative positions of the parties interested and the substance of the transaction which the instrument embodies must be taken into account."

In the case before us it was stipulated that gypsum had been produced in Barber county as early as 1912, and that it was being produced at the time the deeds in question were executed. It

also was stipulated that when the deed from defendant Ely to Smith was executed in 1943 there was oil and gas production about six miles from the tract involved.

Entirely aside from the fact that had the grantor (Ely) intended to reserve gypsum it would have been very easy to have specifically said so in the quite lengthy reservation, we believe that application of the foregoing rules to this case makes it clear that the general terms contained in the reservation must be deemed to embrace and include only those things similar in nature to those previously specifically enumerated—that is, oil, gas and kindred minerals. We agree with the trial court that the reservation does not include gypsum.

The judgment is affirmed.

FONTRON, J., not participating.